## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**IRMA BERNAL-LUJAN**

      **Plaintiff,**

**vs.**                                                            **No. CV 02-0861 WDS**

**JOANNE B. BARNHART, Commissioner**
**of the Social Security Administration,**

      **Defendant.**

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon Plaintiff's Motion to Reverse or Remand Administrative Agency Decision, filed March 26, 2003. Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security, who determined that Plaintiff was not disabled. The Court, having considered Plaintiff's Motion **[Doc. 11]** and Memorandum in Support of Motion **[Doc. 12]**, Defendant's Response **[Doc. 13]** and Plaintiff's Reply **[Doc. 14]**, the administrative record and applicable law, finds that Plaintiff's Motion should be granted.

### BACKGROUND

Plaintiff filed her application for social security disability benefits on July 18, 2000, contending that her alleged disability began on February 13, 2000. Tr. 40-42. Her application was denied at the initial and reconsideration levels. Tr. 23, 28. On June 12, 2001, Plaintiff filed a request for hearing before an Administrative Law Judge (ALR). Tr. 31-32.

The ALR held a hearing on January 23, 2002, at which Plaintiff appeared and was represented by an attorney. Tr. 166-200. In a decision dated April 18, 2002, the ALJ denied Plaintiff's request for benefits. Tr. 9-18.

Plaintiff filed a request for review with the Appeals Council on May 13, 2002. Tr. 6-7. The Appeals Council denied Plaintiff's request for review on June 24, 2002, and thereby rendered the ALJ's decision the final decision of the Commissioner of Social Security. Tr. 4-5. *See* 20 C.F.R. §416.1481 (2003).

Plaintiff filed this action on July 18, 2002, in which she seeks judicial review of the Commissioner's final decision. **[Doc. 1]** The parties subsequently consented to have the undersigned United States Magistrate Judge conduct all proceedings **[Docs. 8 and 9]**, and on March 26 2003, this case was reassigned to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(c). **[Doc. 10]**

<u>STANDARD OF REVIEW</u>

This Court's review of the Commissioner's findings is limited to the following:

      a.     First, the Court determines whether the Commissioner's findings are supported by substantial evidence in the record. *Andrade v. Secretary of Health & Human Servs.,* 985 F.2d 1045, 1047 (10th Cir. 1993). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988)) (additional citations omitted). In determining whether the Commissioner's findings are supported by substantial evidence, the Court does not undertake a *de novo* review of the evidence. *Sisco v. U.S. Dep't of Health & Human Servs.,* 10 F.3d 739, 741 (10th Cir. 1993). The Court should not re-weigh the evidence, nor should it substitute its judgment for that of the Commissioner. *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994). Instead, the Court should meticulously examine the entire record to determine if the Commissioner's decision is supported by more than a scintilla, but less than a preponderance, of evidence. *See Williams v. Bowen,* 844 F.2d

2

748, 750 (10th Cir. 1988); *Sisco,* 10 F.3d at 741.

      b.    Second, the Court determines whether the Commissioner applied the correct legal standards. *Andrade*, 985 F.2d at 1047. "The 'failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal.'" *Id.* (quoting *Byron v. Heckler,* 742 F.2d 1232, 1235 (10th Cir. 1984)) (additional citations omitted).

In order to qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity. *See* 42 U.S.C.§423(d)(1)(A); *see also Thompson v. Sullivan,* 987 F.2d 1482, 1486 (10th Cir. 1993). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R.§ 404.1520(a-f). The sequential evaluation process ends, if, at any step, the Commissioner finds the claimant is not disabled. *See Thompson*, 987 F.2d at 1487.

At the first three levels of the sequential evaluation process, the claimant must show: (1) that she is not engaged in substantial gainful employment; (2) that she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; and (3) that her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpart P, App. 1. If the claimant cannot show that she has met or equaled a listing, she must show at Step Four that she is unable to perform work she has done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity

considering her residual functional capacity, age, education, and prior work experience.  *Id.*

MEDICAL HISTORY

According to the records in evidence, Plaintiff was first seen at the University of New Mexico Hospital ("UNMH") on October 8, 1999.  Tr. 126.  She was brought in via ambulance for evaluation because of suicidal ideation.  Tr. 126.  She reported being depressed for the past three months with increased family stressors due to marital dysfunction and family discord.  Tr. 126.  Her family reported a history of depression and suicide threats as an attention seeking act.  Tr. 126.  Her GAF was assessed to be 40 at that time.[1]  Tr. 127.  She was given Zoloft and left the hospital in stable condition with her family.  Tr. 127.

Plaintiff was seen for follow-up visits at UNMH on October 15, 1999 (Tr. 124-25), October 29, 1999 (Tr. 122-23) and November 17, 1999 (Tr. 121).  By November, the family stressors were still present but Plaintiff was doing better.  Tr. 121.  She was taking Zoloft for depression and Trazodone for sleep problems.  Tr. 121.  She was to return in one month.  Tr. 121.

In April, 2000, Plaintiff was seen at the UNMH Family Practice Clinic to establish a new primary care physician.  Tr. 91.  She reported that she had tried going off the Zoloft but had increased depression.  Tr. 91.  She was reportedly doing relatively well after resuming her medication.  Tr. 91.  The physician refilled her prescription for Zoloft.  Tr. 92.  It was also noted that Plaintiff is "partially deaf in the left ear."  Tr. 91.

---

[1]The GAF is a subjective determination based on a scale of 100 to 1 of "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed.2000).  A GAF score of 31 -40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgement, thinking, or mood such as avoiding friends, neglecting family and/or an inability to work.  *Id.* at 34.

4

Plaintiff had follow-up visits at the UNMH Outpatient Clinic on June 9, 2000 (Tr. 163) and September 7, 2000 (Tr. 162). On September 10, 2000, a Psychiatric Assessment & Evaluation was performed at UNMH. Tr. 142-44. Plaintiff reported feeling depressed and hearing voices telling her to kill herself. Tr. 142. She left the Mental Health Center against medical advice but spoke to a physician on the telephone once she returned home and told him that she would not harm herself. His diagnosis was depression and he rated her GAF at 45.[2] She was seen at the Family Practice Clinic again on September 21, 2000 (Tr. 161) and again on November 13, 2000. Tr. 159-60. On November 13, 2000 her depression was thought to be stable. Tr. 159-60. Nevertheless, Plaintiff was admitted to UNMH on November 15, 2000 for depression and suicidal ideation with intent. Tr. 89-90. She indicated that she had planned to drive her car off of a cliff. Tr. 90. She was discharged home to her family the next day. Tr. 89.

On December 6, 2000, Steven Sacks, M.D. performed a Psychiatric Consultative Exam on the Plaintiff. Tr. 83-88. After taking a thorough history and completing an exam, Dr. Sacks' diagnosis was major depression with some possible psychotic features including auditory hallucinations. Tr. 83-88. He rated her GAF at 65.[3] Tr. 87. It was Dr. Sacks' impression that, because of her depression, Plaintiff would have difficulty relating with other workers and supervisors and dealing with the public. Tr. 87. However, he believed that she could deal with changes in the

---

[2]A GAF of 41 - 50 indicates serious symptoms such as suicidal ideation or any serious impairment in social, occupational, or school functioning such as an inability to keep a job. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

[3]A GAF of 61 - 70 indicates some mild symptoms such as depressed mood or some difficulty in function, but "generally functioning pretty well, has some meaningful interpersonal relationships." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

"workplace situation and be aware of normal hazards and react appropriately." Tr. 87. As far as her ability to carry out instructions, Dr. Sacks stated the following:

> The Claimant could understand and remember short, simple instructions but probably would have difficulty with more detailed or complex instructions because of her depression. She could maintain the attention required for simple, repetitive, but probably not more complex tasks. The claimant would have difficult withstanding the stress and pressures associated with day-to-day work activity at the present time because of her depression.

Tr. 87.

The day following Dr. Sacks' evaluation, Plaintiff was seen at UNMH and a General Clinic Psychiatric Assessment was done. Tr. 140-41. She was feeling depressed but not suicidal and was found to be moderately ill. Tr. 140-41. Her GAF was assessed to be 45. Tr. 141.

On December 18, 2000, a Psychiatric Review Technique was performed and Plaintiff was found to have a depressive syndrome characterized by appetite disturbance, sleep disturbance, thoughts of suicide and possible hallucinations. Tr. 101. However, her functional limitations were found to be in the mild to moderate range. Tr. 108. Her activities of daily living were mildly restricted; she had mild difficulty in maintain social functioning; she had moderate difficulty in maintaining concentration, persistence or pace; and, she had no episodes of decompensation. Tr. 108. A Residual Functional Capacity Assessment done on the same day, found that there was no lay or clinical evidence that would support Plaintiff's allegation that she was unable to work because of mental problems. Tr. 114.

In early 2001, Plaintiff had improved on medication. Tr. 116-117. A February 8, 2001 note from UNMH stated that her increased dose of Zoloft was helpful and that Plaintiff stated that she didn't "feel so depressed all the time." Tr. 116.

6

Plaintiff was seen in the Family Practice Clinic on March 30, 2001.  Tr. 156-57.  It was noted

that she was being followed "by Psychiatry every two weeks."  Tr. 157.  She was also noted to have

"mild sensory neural hearing loss right ear, profound sensory neural hearing loss in left ear."  Tr. 156.

In July, 2001, Plaintiff returned to UNMH wanting to resume treatment.  Tr. 137-39.  The

Plaintiff was somewhat stable on  Zoloft but was reporting break-thru episodes of depression two to

three times a month along with increased symptoms of anxiety.  Tr. 139.  The evaluator found her

to be suffering from the following vegetative symptoms:  decreased sleep, poor appetite, decreased

energy, decreased concentration and increased feelings of worthlessness. Tr. 137.  She was no longer

having hallucinations but was fearful of their return.  Tr. 139.  She was not having any thoughts of

suicide.  Tr. 139.  Her GAF was assessed to be 45 at that time.  Tr. 139.

<u>ANALYSIS</u>

**Issue One: Whether the findings of the ALJ at the fifth step of the analysis
were supported by substantial evidence**

Plaintiff's first contention is that the ALJ's vocational findings at the fifth step of the analysis

are inadequate and unsupported.  Specifically, the ALJ found:

> Considering the types of work that Ms. Bernal-Lujan is still functionally capable of
> performing, in combination with her age, education and work experience, both 20
> CFR section 204.00 and a framework application of Medical-Vocational Rule 203.21
> support that Ms. Bernal-Lujan could be expected to make a vocational adjustment to
> work that exists in significant numbers in the national economy.

Tr. 18.  Plaintiff asserts that the ALJ did not properly apply the legal standard regarding vocational

evidence when he ignored vocational expert  testimony that did not support his determination, but

that was supported by substantial evidence.  It is well established that an ALJ "may not ask a

vocational expert a hypothetical question based on substantial evidence and then ignore unfavorable

answers." *Campbell v. Bowen*, 822 F.2d 1518, 1523 n. 6 (10th Cir. 1987).  Furthermore, "testimony

elicited by hypothetical questions that do not relate with precision all of a claimant's impairments

cannot constitute substantial evidence to support the Secretary's decision." *Hargis v. Sullivan,* 945

F.2d 1482, 1492 (10th Cir. 1991) (quoting *Ekeland v. Brown*, 899 F.2d 719, 724 (8th Cir. 1990)).

 

After first discussing Plaintiff's hearing impairment, the ALJ asked the vocational expert the

following hypothetical question:

> Now, assume that we have an individual who has a seriously limited but not precluded
> ability to deal with the public, a limited but satisfactory ability to deal with work
> stresses, seriously limited but not precluded ability to follow detailed to complex
> instructions, and a limited but satisfactory ability to follow simple instructions, would
> there be work at any exertional level, also taking into account the background noise
> issue that we just discussed, would there be work at any exertional level for a person
> with those limitations?

Tr. 195.  The VE responded in the affirmative, indicating that the individual would have to work

independently in a job such as a   laundry folder, advertising material distributor or a

maid/housekeeper, with the number of maid/housekeeper jobs reduced because of stress by 50%.  Tr.

195.  The ALJ followed up with two other hypotheticals, adding a seriously limited but not precluded

ability to deal with work stresses (Tr. 195-96) and then adding a limited but satisfactory to, on

occasion, seriously limited but not precluded ability to behave in an emotionally stable manner due

to crying spells. Tr. 196.  The vocational expert stated that with these limitations, an individual would

be able to get a job but not be able to maintain employment.  Tr. 195-97.

Both parties concede, and this Court agrees, that the ALJ's first hypothetical was supported

by substantial evidence in the record.   The dispute involves the next two hypotheticals asked by the

ALJ.  Defendant contends that it was appropriate for the ALJ not to rely on the second two

hypotheticals because they contained additional limitations that were not supported by the record. Plaintiff disagrees. The question is whether the hypotheticals were supported by substantial evidence. If they were, the ALJ was bound to rely on the vocational expert's response; if not, it was within his discretion to choose not to rely on it.

In his report, Dr. Sacks found that, "The claimant would have difficulty withstanding the stress and pressures associated with day-to-day work activities at the present time because of her depression." Tr. 87

The record indicates that Plaintiff treated at UNMH throughout 2000 for depression and routine health problems. Tr. 91-97, 118-119, 142-144, 150, 152-165. During Plaintiff's visits at UNMH her GAF was consistently assessed to be no higher than 45, which indicates serious symptoms (e.g. suicidal ideation) or serious impairment in functioning (e.g. unable to keep a job). She was admitted for an overnight stay on November 15, 2000 for depression and suicidal ideation. Tr. 89 - 90. The ALJ failed to address any of this evidence in his decision. Nor did he discuss the fact that Dr. Sacks assessed her GAF to be 65 (Tr. 87) and the very next day one of her treating physicians at UNMH assessed it to be 45. Tr. 141.

In July, 2001, Plaintiff returned to UNMH wanting to resume treatment and to be placed back on medication. Tr. 137-39. Her GAF was assessed to be 45 at that time. Tr. 139. Again, the ALJ failed to discuss the Plaintiff's low GAF and how it affected his analysis.

Plaintiff is correct when she states that an ALJ is required to discuss the evidence and explain why he or she found the claimant was not disabled. *Clifton v. Chater*, 79 F.3d 1007 (10th Cir. 1995). Under the Social Security Act,

[t]he Commissioner of Social Security is directed to make findings of fact, and

> decisions as to the rights of any individual applying for a payment under this
> subchapter.   Any such decision by the Commissioner of Social Security which
> involves a determination of disability and which is in whole or in part unfavorable to
> such individual shall contain a statement of the case, in understandable language,
> setting forth a discussion of the evidence, and stating the Commissioner's
> determination and the reason or reasons upon which it is based.

42 U.S.C 405(b)(1).  The record must show that the ALJ considered all of the evidence but he or she

is not required to discuss every piece of evidence in the record.  *Clifton,* 79 F.3d. at 1009-1010.

Rather, the ALJ must discuss both the evidence supporting his decision as well as any uncontroverted

evidence he or she chose not to rely on and any probative evidence he chose to reject.  *Id.* at 1010.

Here, the ALJ  did not give any reasons for rejecting the vocational expert's testimony following the

second and third hypothetical questions that he posed to her.  When an ALJ does not provide any

explanation for rejecting medical evidence, the appellate court has no way to effectively review the

ALJ's determination.  *See, e.g., Clifton*, 79 F.3d at 1009 ("in the absence of ALJ findings supported

by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports

the ALJ's conclusion"); *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (holding that the ALJ's

analysis was deficient when the court was "left to speculate what specific evidence led the ALJ to [his

conclusion]").

The ALJ did, however, state in the body of his decision that he gave "Dr. Sack's [sic] findings

and the opinions of the state agency medical consultants controlling evidentiary weight in this case."

Tr. 15.  When medical evidence is presented by both consulting physicians retained by the Social

Security Administration as well as by a treating physician, the treating physician's opinion is entitled

to decisive weight.  *Kemp v. Bowen*, 816 F.2d 1469 (10th Cir. 1987).  "When an ALJ decides to

disregard a medical report by a claimant's physician, he must set forth 'specific, legitimate reasons'

for his decision.' [citations omitted]." *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001).

In this case, there is no explanation given as to why the ALJ rejected the testimony of the vocational expert or why he chose to give controlling weight to Dr. Sacks and the other state agency physicians. This court, therefore, concludes that the ALJ did not follow correct legal standards and his findings at the fifth step of the analysis are not supported by substantial evidence.

### Issue Two: Whether the ALJ fully developed the record regarding Plaintiff's hearing impairment

In her second claim of error, the Plaintiff alleges that the ALJ failed to fully and fairly develop the record regarding her hearing impairment. Plaintiff alleges, and this court agrees, that the "ALJ has a duty to fully and fairly develop the record and to assure the claimant's interests are considered." *Carter v. Chater*, 73 F.3d 1019, 1021 (10th Cir. 1996). "[A] Social Security disability hearing is a nonadversarial proceeding, in which the ALJ has a basic duty of inquiry, 'to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts.' " *Dixon v. Heckler*, 811 F.2d 506, 510 (10th Cir.1987) (quoting *Heckler v. Campbell*, 461 U.S. 458, 471 n. 1 (1983) (Brennan, J., concurring)). It must be determined whether the ALJ asked sufficient questions to ascertain (1) the nature of a claimant's alleged impairments, (2) what on-going treatment and medication the claimant is receiving, and (3) the impact of the alleged impairment on a claimant's daily routine and activities." *Musgrave v. Sullivan*, 966 F.2d 1371 (10th Cir. 1992).

In discussing Plaintiff's hearing impairment in the body of his report, the ALJ stated, "...as such a limitation may reasonably impose more than a minimal barrier to performance of certain occupations, Ms. Bernal-Lujan's hearing impairment will also be considered 'severe.'" Additionally, the ALJ stated the following:

I have also considered her contention that her hearing problem causes difficulties to areas which have high levels of background noise. However, she has worked in such environments for many years previously and the extent of her hearing problem is not quantified in the record other than the verbal description that it is mild in one ear and profound in the other (Exhibit B10F). *Even so, I will consider the likelihood that potential vocational limitations are attributable to such a condition* (Exhibit B7E3).

Tr. 16 (emphasis added). The ALJ also made a specific finding that Plaintiff is "limited to vocational environments with low levels of background noise." Tr. 18.

In addition, he discussed Plaintiff's hearing impairment with the vocational expert and included it in his hypothetical questions to the expert. It is clear that the ALJ accepted as true Plaintiff's statement regarding her hearing problems and included that limitation in her residual functioning capacity. Accordingly, this Court finds that the ALR was under no duty to further develop the record regarding Plaintiff's hearing impairment.

### Issue three:  Whether the ALJ's credibility assessment is support by substantial evidence

Lastly, Plaintiff argues that the ALJ applied incorrect legal standards in assessing her credibility and that the ALJ's resulting credibility findings were not based on substantial evidence. Plaintiff contends that the ALJ failed to link any evidence to the credibility findings or explain how the evidence demonstrated she was not credible, as is required by Social Security Ruling 96-7p. "'Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence.'" *McGoffin v. Barnhart,* 288 F.3d 1248 (10th Cir. 2002) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). Nonetheless, the ALJ must "closely and affirmatively link [his credibility findings] to substantial evidence and not just [make] a conclusion in the guise of findings." *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1988).

In this case, the ALJ made a finding that Plaintiff's "allegations regarding her vocation limitations are not totally credible for the reasons set forth in the body of the decision." Tr. 18. However, the body of the decision did not contain any discussion of credibility issues. The ALJ did state, "I have also considered Ms. Bernal-Lujan's testimony, and have integrated her self-reported limitations into my ultimate residual functional capacity finding." Tr. 15. A thorough discussion and analysis of Plaintiff's allegation regarding her vocational limitations was not done.

As noted earlier, the reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. The determination or decision must contain specific reasons for the finding on credibility, support by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statement and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision. The reasons given by the ALJ for disregarding Plaintiff's allegations regarding her vocational limitations were insufficient for the Court to fairly review this decision.

<u>Disposition</u>

When this Court reverses a decision by the Commissioner, the Court has discretion to either remand for further administrative proceedings or for an immediate award of benefits. *Ragland v. Shalala*, 922 F.2d 1056, 1060 (10th Cir. 1993). Therefore, this matter is hereby remanded in order for the ALJ to set out his specific findings and his reasons for accepting or rejecting evidence at the fifth step of the analysis and in assessing Plaintiff's credibility.

13

W. Daniel Schneider
UNITED STATES MAGISTRATE JUDGE